**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**MARTA D. KURSHUMOVA, ESQ.**
Nevada Bar No. 14728
E-mail: mkurshumova@hkm.com
**DANA SNIEGOCKI, ESQ.**
Nevada Bar No. 11715
E-mail: dsniegocki@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 625-3893
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| KATHRYN SHINKLE, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>NEVADA DONOR NETWORK, INC., a Domestic Nonprofit Corporation; DOES I - X; ROE CORPORATIONS I -X.<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT AND JURY DEMAND** |

The Plaintiff Kathryn Shinkle ("**Ms. Shinkle**") by and through her attorneys of record with the law firm of HKM Employment Attorneys LLP, hereby complains and alleges as follows:

## JURISDICTION

1. This is an action for damages brought by Plaintiff for unlawful workplace discrimination based on sex, and retaliation under Title VII of the Civil Rights Act of 1964 ("**Title VII**"), 42 U.S.C. §2000e *et seq.* as outlined below.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C. § 2000e-5(f)(3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. § 1367.

3. All material allegations contained in this Complaint are believed to have occurred in Clark County, Nevada. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDY

4. On or about September 19, 2016, Plaintiff initiated the process of filing a Charge of Discrimination against her former employer, the Defendant named in this action with the Nevada Equal Rights Commission ("**NERC**")/United States Equal Employment Opportunity Commission ("**EEOC**") wherein she alleged discrimination based on sex, and retaliation.

5. On or about January 30, 2020, "the EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge" and issued her Notice of Right to Sue.

6. This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

7. Plaintiff has exhausted her administrative remedy on all claims pled hereunder prior to filing this action with this Court.

## GENERAL ALLEGATIONS

8. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

9. Plaintiff is a United States citizen and current resident of Jackson County, Missouri. At all relevant times, Plaintiff was a resident of Clark County, Nevada.

10. Defendant Nevada Donor Network, Inc. is a Domestic Nonprofit Corporation and an employer in the State of Nevada.

11. At all times relevant to this matter, Defendant had over 15 employees, and is therefore subject to the provisions of Title VII.

12. Plaintiff first began her employment with Defendant on September 28, 2015 as a funeral home liaison and as a liaison between the Nevada Donor Network and the Clark County Coroner's office.

13. Plaintiff experienced discrimination and harassment at the hands of Brent Bergquist ("**Mr. Bergquist**"), Plaintiff's immediate supervisor.

14. Mr. Bergquist exhibited biases against female employees on a daily basis.

15. Mr. Bergquist openly favored male employees and overlooked any mistakes or inappropriate behavior by the male employees.

16. On or about November 25, 2015, Mr. Bergquist performed Plaintiff's 60-day review in the presence of Irma Sison ("**Ms. Sison**"), a manager at the Company.

17. Mr. Bergquist told Plaintiff she was not right for the position and that he could not chalk it up to Plaintiff being young or out of state.

18. Mr. Bergquist referenced a negative interaction Plaintiff had had with the Coroners' office over a traffic ticket Plaintiff got in the beginning of her employment with Defendant.

19. During the meeting, Mr. Bergquist used inappropriate sexist remarks.

20. Mr. Bergquist also called Plaintiff a "know-it-all" and continuously threatened Plaintiff he could fire her for any reason.

21. Mr. Bergquist further told Plaintiff she is only there for the money to buy more bling.

22. Finally, Mr. Bergquist had Plaintiff sign a disciplinary form while misrepresenting the purpose of the form.

23. More specifically, Mr. Bergquist told Plaintiff to ignore the fact that the form said "disciplinary" because he only wanted to use the form to prove they had the conversation.

24. Plaintiff only signed the form because Mr. Bergquist had threatened her job several times during the meeting and was afraid of retaliation if she did not comply.

25. Following the 60-day review, Plaintiff complained to Human Resources about the inappropriate 60-day review, the sexist comments and Mr. Bergquist's behavior.

26. Human Resources encouraged Plaintiff to speak with Mr. Bergquist directly.

27. Shortly thereafter, Mr. Bergquist changed Plaintiff's job duties to helping a male employee, Russ *Last Name Unknown* (hereinafter referred to as "**Russ**") to perform her duties as a funeral home liaison.

28. Plaintiff's new job duties were mainly secretarial – scheduling Russ' meetings, submitting drafts to Russ for approval and making changes per his request.

29. Mr. Bergquist banned Plaintiff from making any suggestions for six (6) months.

30. Russ openly disapproved of Plaintiff making suggestions.

31. Mr. Bergquist consistently favored Russ and openly preferred him for Plaintiff's position.

32. Mr. Bergquist openly discussed making Russ a supervisor in Mr. Bergquist's department.

33. Shortly thereafter, Plaintiff asked Mr. Bergquist if she could train with Leslie Barron ("**Ms. Barron**") on the procedure for MOUs.

34. Upon information and belief, Ms. Barron had an established and well-working system for MOUs.

35. Mr. Bergquist denied Plaintiff's request and accused Plaintiff of insubordination for speaking to Ms. Barron about the MOUs procedures without his knowledge or approval.

36. Upon information and belief, Mr. Bergquist did not like Ms. Barron and disapproved of her having any involvement in his department.

37. Mr. Bergquist had approved the same or similar idea by male employees.

38. Upon information and belief, Mr. Bergquist does not approve of female leadership at the workplace.

39. Upon information and belief, Mr. Bergquist does not like working with female

employees unless they follow the traditional female role.

40. On one occasion, Mr. Bergquist targeted Plaintiff accusing her of dressing inappropriately.

41. More specifically, Mr. Bergquist had another female employee approach Plaintiff to inform Plaintiff he found Plaintiff's outfit inappropriate.

42. Plaintiff's outfit, consisting of a blouse, long pants, and boots, adhered to the dress code and Plaintiff had worn the same outfit on several occasions without a problem.

43. Mr. Bergquist did not reprimand similarly situated employees not of Plaintiff's protected class for the same reason.

44. For example, when Mr. Bergquist received complaints against Russ based on Russ' behavior, Mr. Bergquist would say "he's just a Texas boy."

45. Another male employee under Mr. Bergquist's direct supervision is known to sleep on the job and has never been disciplined for it.

46. Mr. Bergquist would also make sexist comments to Plaintiff and other female employees.

47. Mr. Bergquist would also insult and demean Plaintiff on a regular basis.

48. Mr. Bergquist did not engage in such behavior toward similarly situated employees not of Plaintiff's protected class.

49. On or about November 30, 2015, Plaintiff requested a meeting with Mr. Bergquist to address his discriminatory behavior and the mishandled 60-day review.

50. Mr. Bergquist did not take responsibility for his actions but instead told Plaintiff he is glad she took the 60-day review this way because that proved she was "human."

51. Plaintiff's situation remained unchanged – Plaintiff continued to perform mainly secretarial duties and did not receive any training from Defendant.

52. Plaintiff only received training from a fellow Coroner and Funeral Home liaison.

53. Plaintiff received praises for her work from the Coroner's Office and a supervisor.

54. On or about December 28, 2015, Mr. Bergquist met with Plaintiff for her 90-day

review and, although he acknowledged the positive feedback regarding Plaintiff, he informed Plaintiff he did not think she was fit for the position.

55. Plaintiff communicated her concerns to Mr. Bergquist and Human Resources, especially the lack of training.

56. Shortly after the 90-day review, Mr. Bergquist extended Plaintiff's probationary period by another 30 days.

57. Mr. Bergquist claimed he extended Plaintiff's probationary period because he wanted Plaintiff to receive more training and so that Plaintiff can prove to him she belonged at the Company.

58. Plaintiff complained to Lashunda with Human Resources about the sex discrimination Mr. Bergquist put her through, about the emotional distress he causes her, the sexism Plaintiff saw exhibited toward other female employees, and that she feared retaliation if she spoke with Human Resources.

59. Plaintiff went on vacation shortly after the meeting with Lashunda – from on or about January 1, 2016 until January 13, 2016.

60. Mr. Bergquist terminated Plaintiff immediately upon her return to work in the presence of Lashunda.

61. Upon information and belief, Russ maintained Plaintiff's duties after her termination.

62. After her termination, Plaintiff complained to Defendant's Chief Financial Officer about the termination and the general situation with Mr. Bergquist.

63. Defendant's Chief Financial Officer told Plaintiff he was aware of Plaintiff's complaints but that what was done was done.

64. Upon information and belief, Defendant intentionally discriminated against Plaintiff based on her sex, female.

65. Upon information and belief, Defendant unlawfully retaliated against Plaintiff for submitting a complaint of discrimination with Human Resources and upper management.

///

## FIRST CAUSE OF ACTION
**(Discrimination Based on Sex in violation of Federal Statutes)**

66. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

67. Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on sex.

68. Defendant as an employer is subject to Title VII, 42 U.S.C. § 2000e et. seq. as amended and thus, has a legal obligation to provide Plaintiff a fair non-discriminatory work environment and employment opportunities.

69. Defendant refused to take reasonably adequate steps to prevent discrimination against Plaintiff by knowingly favoring employees not of Plaintiff's protected class.

70. Defendant discriminated against Plaintiff when it failed to treat her the same way as similarly situated employees not of Plaintiff's protected class.

71. No other similarly situated persons, not of Plaintiff's protected class were subject to the same or substantially similar conduct.

72. Plaintiff suffered adverse economic impact due to Defendant's unlawful treatment of her, including her termination.

73. Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against her.

74. Plaintiff suffered compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful discrimination by her employer.

75. Plaintiff is entitled to be fully compensated for her emotional disturbance by being forced to endure this discrimination.

76. Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's intentional repeated violations of federal and state civil rights laws.

77. Plaintiff suffered damages in an amount deemed sufficient by the jury.

78. Plaintiff is entitled to an award of reasonable attorney's fees.

79. Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of her sex.

80. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## SECOND CAUSE OF ACTION
### (Retaliation under Federal Law, 42 U.S.C. § 2000e-3)

81. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

82. In violation of 42 U.S.C § 200e-3, Defendant retaliated against Plaintiff after she complained of acts which she reasonably believed were discriminatory.

83. There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff.

84. The actions and conduct by Defendant constitute illegal retaliation which is prohibited by federal law.

85. Plaintiff suffered damages in an amount deemed sufficient by the jury.

86. Plaintiff is entitled to an award of reasonable attorney's fees.

87. Defendant is guilty of oppression, fraud or malice, express or implied because Defendant knowingly and intentionally retaliated against Plaintiff because she complained of acts she considered discriminatory.

88. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

/ / /

/ / /

/ / /

/ / /

**WHEREFORE,** Plaintiff prays this court for:

   a. A jury trial on all appropriate claims;

moreover, to enter judgment in favor of the Plaintiff by:

   b. Awarding Plaintiff an amount sufficient to fully compensate her (including tax consequences) for all economic losses of any kind, and otherwise make her whole in accordance with the law;

   c. General damages;

   d. Special damages;

   e. An award of compensatory and punitive damages to be determined at trial;

   f. Pre and post-judgment interest;

   g. An award of attorney's fees and costs; and

   h. Any other relief the court deems just and proper.

Dated: April 24, 2020.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS, LLP**

*By: /s/ Jenny L. Foley*
**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**MARTA D. KURSHUMOVA, ESQ.**
Nevada Bar No. 14728
E-mail: mkurshumova@hkm.com
**DANA SNIEGOCKI, ESQ.**
Nevada Bar No. 11715
E-mail: dsniegocki@hkm.com
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 625-3893
*Attorneys for Plaintiff*